Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Robert D. McLaren presiding along with Justice Catherine E. Zenoff and Justice Donald C. Hudson. The case is number 219-0879, Daniel Day Easterday et al, plaintiff's appellees versus the Village of Deerfield defendant appellant. Arguing for the appellant, Christopher B. Wilson, arguing for the counsel, you may proceed. Thank you, good morning, your Honors and they appease the court. Before this court today, because of three fundamental errors in the Circuit Court of Lake County's decision, permanently enjoining Deerfield's ban on assault weapons. First, the Circuit Court erred by holding that the General Assembly's Floyd Act Amendment preempted home rule authority. In fact, the Floyd Act Amendment expressly preserved concurrent home rule authority. Second, the Circuit Court erred by holding that Deerfield's 2018 amendments to its 2013 ordinance were not amendments, but constituted new legislation not permitted by the Floyd Act Amendment. In fact, the purpose, intent, and text of the 2018 amendments made clear that Deerfield was amending its 2013 earlier regulation of assault weapons, and that this amendment was expressly permitted by the General Assembly's Floyd Act Amendment. Third, the Circuit Court erred by enjoining Deerfield's ban on large capacity magazines. Large capacity magazines have routinely been recognized by courts, by legislatures, and even by the US Congress as fundamental components of assault weapons. I will now address each of these three errors in more detail. Before I turn to that, however, I wanted to address the Court's jurisdiction. I wanted to confirm to the Court that you indeed have jurisdiction to hear this appeal. In our initial appeal, the Court noted that the Circuit Court's order did not contain the finding pursuant to Supreme Court Rule 304A permitting the interlocutory appeal of a permanent injunction. This Court also noted it could not determine whether the cases had merged. We return for further proceedings before Judge Baronis. He made very clear the cases had merged in July 27, 2018 order. Combining the cases for all future proceedings was intended to merge the cases, and indeed merged them. He also provided the requisite 304A findings. This Court asked for more clarity on those issues. Judge Baronis had not provided it. This Court has jurisdiction. Turning to the first error, the preemption, the General Floyd Act were a unique hybrid approach to jurisdiction. It expressly provided for the concurrent jurisdiction of Home Rule authorities such as Deerfield over assault weapons. Specifically, if a Home Rule jurisdiction adopted a regulation either before the enactment of the Floyd Act Amendment or within a 10-day window, it would have jurisdiction. Any Home Rule unit that regulated assault weapons, either before the Floyd Act Amendment became effective or within a 10-day window after it, enjoyed concurrent jurisdiction along with the state over assault weapons. To our knowledge, there's no other statute that applied this kind of hybrid approach. The Supreme Court simply overlooked that. It chose to focus on the indication by the General Assembly of its exclusive jurisdiction. It cited to Paragraph 6H of the Illinois Constitution, but it ignored the clear language that permitted concurrent jurisdiction. You cannot ignore the clear text and intent of the General Assembly. In fact, at the time when the law was passed, there was considerable debate over whether or not how this would be put into effect. We have testimony from Representative Scott Drury. We're not offering that as legislative history. We're just offering that along with the articles from NRA and other young advocates who were saying that this was how this would work. A regulation could be adopted and then it could be but it certainly provided for concurrent jurisdiction. If a home rule unit acted within the 10-day window or before, its regulations were grand bothered in. The court erred by ignoring that. Second, amendments. Were these proper amendments in 2018 going from regulation for the state's storage and transportation of assault weapons to outright ban? Yes, these were absolutely amendments and they were permitted by the General Assembly and by the 2013 Floyd Act amendments. What did the text of Paragraph 13.1C provide? Any regulation may be amended. The clear purpose of that was to allow people to adopt initial restrictions, initial regulations, and then strengthen them or loosen them if they saw fit, including up to an outright ban. The reliance by the plaintiffs on the case of A.C. is simply misplaced. That case was far different both in nature and in procedure than the case here. In A.C., a Third Circuit case that is not binding on this court, the court was asked to was actually amendments for an altogether new zoning code. If it was a new zoning code, it could be passed by a simple majority, not by a supermajority. The underlying history was unclear. The municipality referred to it changes both as a new law and as an amendment. By comparing them side by side, the court determined that there were over 100 new definitions, nearly 100 new pages of code. The code had gone from 16 pages to 115 pages. On that basis, they found that A.C. was that the new zoning code was actually an entirely new law. That's not the case here. In fact, the amendments in 2018 were labeled as amendments. There was no ambiguity. They made clear they were amending the earlier statute by including a black line or red line version as the actual ordinance. The purpose was consistent with the Floyd Act. They adopted a regulation and then they amended it. Finally, large capacity magazines. I think this gets to a fundamental misunderstanding between the plaintiffs and critical components of a dangerous assault weapon. They've been defined that way since at least the 1994 federal assault weapons ban by the U.S. Congress. Every case we could find that included a ban on assault weapons also included a ban on large capacity magazines. They are part and parcel of one another. It's within under the Floyd Act it's within the authority of the municipality to define assault weapons that they see fit. Deerfield from 2013 forward defined assault weapons as including large capacity magazines. These are magazines that accept more than 10 rounds. They're extremely dangerous. They allow shooters to shoot multiple rounds without reloading. For example, in the Denver theater shooting, the attacker had 100 round magazines. These are highly dangerous and they were offered as an alternative basis. The wildlife code there, Judge Brown has properly found this was simply inapplicable to the that the wildlife code did not preempt the Floyd Act amendments. Each of the plaintiffs haven't joined this argument and nor should they. It lacks any legal or factual support. The wildlife code addresses hunting. It doesn't take life plaintiffs to rely really on a loophole within a loophole like a pamphlet from the Illinois Department of Natural Resources. There is no textual support or legislative history or any other fact to support the wildlife code as a basis for preempting the legislature's ban on assault weapons. The fact is the wildlife code does not expressly discuss assault weapons. It has no bearing on these issues at all. Where assault weapons are illegal, they cannot be used for hunting or any other purpose. So in conclusion, under 23 amendments to the Floyd Act, the General Assembly's approach to the regulation of assault weapons is complicated and unprecedented, but clear. It adopted a hybrid approach to the regulation of assault weapons, which expressly provided for concurrent jurisdiction of home rule authorities such as Deerfield. The Circuit Court erred when it permanently enjoined Deerfield's assault weapons ban. We ask that this Court reverse that decision, dissolve the injunction, and permit Deerfield to ban these incredibly dangerous weapons and to allow Deerfield to protect its citizens from the kind of catastrophic events that provide far too many communities so similar to Deerfield. Thank you. Justice Hudson, do you have any questions? Yes, with regard to the argument about the high capacity restrictions, obviously the trial court concluded that Section 321B of the Floyd Cardiac unambiguously prohibits home rule units from regulating handguns and handgun ammunition. Also, with regard to Section 90 of the Carry Concealed Act, that ostensibly prohibits that local legislation as well. So how do you get around what seems to be the plain language of those acts? Sure, thank you, Your Honor. It's really in 13C at the closing sentence there. For the purposes of this subsection C, assault weapons mean firearms designated by either make or model or by a test or list of cosmetic features that cumulatively would place the firearm into a definition of assault weapon under the ordinance. And at that time, they weren't writing on a blank slate. What that language refers to is the list of muzzle brakes and shroud protectors, large capacity magazines, pistol grips, the list of cosmetic and functional features in the 1994 federal weapons ban, and in the ones adopted by California, New York, and other states, and other municipalities. So it's really up to the home rule authorities to adopt an and they can define assault weapons as they see fit. Whether or not that overlaps, there's no mention of large capacity magazines in 13C, nor anywhere else. But I think it's clear, Your Honor, that it was understood that the type of description of assault weapons was going to be consistent with how it was done everywhere else, which always included large capacity magazines. When you say everywhere else, what are you talking about? Well, particularly the 1994 federal weapons ban included large capacity magazines. In Heller 2, although they had banned handguns, and then that had been found to be unconstitutional, the ban on assault weapons and large capacity magazines was found constitutional. Each time, Your Honor, where they banned assault weapons, they've also banned large capacity magazines. It's part of an assault weapon. That's all we have to look to the Illinois-specific statutory scheme. For example, Section 90 of the Concealed Carry Act clearly prohibits home rule units from regulating handguns and handgun ammunition in a manner that is inconsistent with the Concealed Carry Act. Isn't that what we have to construe here? Well, yes, you do. But there's nothing inconsistent about banning large capacity magazines that still that doesn't regulate a particular type of ammunition. It's consistent with both provisions to ban large capacity magazines. Those are dangerous and unnecessary. All right. Thank you. That's all I have at this time. Thank you. Justice Zinoff, do you have any questions? Yes, I do. First, with respect to jurisdiction, both Easterday and Gun Save Life did obtain by summary judgment all the relief that they requested in the amended complaint. Under these circumstances, would it not have been inappropriate for these parties to have filed cross-appeals, as you had suggested? To appeal Judge Baronis' order on merger? Yes. I think they should have. And I think they've waived that. But, you know, jurisdiction... Excuse me. My question was, wouldn't it have been inappropriate? I mean, when a party gets all the relief that they want, which they did by summary judgment, why would they have filed cross-appeal? Well, I just think as to the specific issue of jurisdiction, to the extent they're attacking Judge Baronis' order as improper or not factually based or not reflecting his actual intent, or to some extent they're saying that he offered a post hoc justification rather than explaining what he had done. I think they're by appealing the order. I think we're in agreement, Your Honor, that they don't need to file an appeal to contest jurisdiction. The court can examine jurisdiction on its own. But I think to attack that order as they've done, they should have filed an appeal. All right. In your oral argument this morning, you talked about hybrid jurisdiction, that is the state having certain authority concurrently with the local municipalities. What is the clear language or text that you are referring to that indicates that concurrent jurisdiction was allowed here? And weren't there certain prerequisites to that concurrent jurisdiction? Yes. So in 13.1c, it states that the state shall have exclusive jurisdiction over assault weapons. Unless, and then it's in the middle section of that paragraph, any ordinance or regulation or portion of that ordinance or regulation by a homeowner unit that purports to regulate the possession or ownership of assault weapons in a manner that is inconsistent with this act shall be invalid unless the ordinance or regulation is enacted on or before or within 10 days after the effective date of this amendatory act. I think that has two important components, Your Honor. First, that's the 10-day window and the grandfathering of any home rule jurisdiction's authority. So we have this patchwork contemplated. And then the language here, inconsistent with this act. Judge Morone has said that that meant a ban. I think inconsistent with this act means inconsistent with the otherwise exclusive jurisdiction of state. So I think both of those components are in 13.c, the provision of a window, the 10-day window in which to adopt a regulation or to grandfather an existing regulation. And the concept that any regulation by a home rule  the exclusive jurisdiction of the state. Okay. Both Gun Safe Life and the trial court indicated, and this might have been what you were referring to, that since the 2013 ordinance wasn't a ban on assault weapons, it wasn't inconsistent with the FOID card. And therefore was not a predicate ordinance which Deerfield could amend. Well, how do you respond to that? How was it a predicate ordinance? Well, it was inconsistent in that it was inconsistent with the exclusive jurisdiction of the state. I think I don't understand how the Easter Day and Gun Safe Life would apply that. There is nothing to be consistent or inconsistent with other than the exclusive jurisdiction provision. There wasn't a regulation of assault weapons by the state that was permitted. The state hasn't adopted any regulation and didn't adopt any regulation with this. It's just reading and creating a reading of that that's inconsistent, if you will, with the law itself. There is no... Doesn't start with the interruption here. It's a little hard doing this remotely, as you know. Well, wasn't there a requirement in the FOID Act that someone who possessed not only a firearm but an assault weapon possess the FOID card? So, there was a regulation. I think that the key... Yeah, go ahead. I understand, Your Honor. But to say that to read this as you could adopt a ban, which would be inconsistent with the Act, but any regulation short of that would be consistent with the Act, simply doesn't make any sense. There was nothing other than the jurisdictional issue to be inconsistent with. What that's referring to, it seems to me, is if you can adopt concurrent jurisdiction, if you assert your own local authority, that's what would be inconsistent with the statewide authority. You'd be reading in something that isn't there if you said, well, a ban would be inconsistent, but a regulation wouldn't be. There is no regulation. Any regulation is inconsistent with the state right now. Okay. Well, I guess I'm saying, isn't there a regulation at least that someone obtained and has a FOID card? Well, there certainly isn't. Yes. Both the legislation that then required the FOID Act, under the FOID Act, to get a FOID card. There was also, remember, this was a much broader bill that permitted for the first time concealed carry in Illinois. So, there was a lot going on and what the legislature, the General Assembly, was doing was striking a balance between a home rule authority and exclusive jurisdiction over assault weapons. They said, for the next 10 days, any home rule authority, any of the 200 plus home rule authorities can assert concurrent jurisdiction. I think that's a tension that goes too far. You can't have exclusive jurisdiction if you are permitting people to have concurrent jurisdiction. It's unworkable, but that's what the General Assembly provided. It certainly didn't say you have to adopt a ban within 10 days. I think what they were recognizing, Your Honor, is this was going to be a lot of pressure on a lot of home rule authorities to determine whether they wanted to regulate assault weapons and then amend them or not. They gave people the opportunity to assert their jurisdiction and then determine the scope of that. In fact, that's exactly what Representative Drury represented at the public meeting of Deerfield. This was a use it or lose it statute. You had to assert your regulatory authority and then you could amend it as you saw fit. Okay. With respect to the AP case, you indicated that we should not undertake this comparative analysis of Deerfield's ordinances because there's no ambiguity here. So was the key in AP that there was ambiguity as to the intent of the municipality? I don't know whether it was so much in AP whether it was the intent or just the facts, but the legislation itself or the ordinance itself was unclear, was ambiguous, whether it was an amendment or new legislation. In some places it referred to an amendment. In other places it referred to due zoning code. And so they performed a comparative analysis to determine which side of the bar it fell on. I think if you properly do the comparative analysis here, you would find that these were amendments. But as a threshold matter, I think when a title amendment where it's a red line, where the changes in the structure are all within the same definitions and same organizational flow, I realize it's moving from a regulation to a ban, but I don't think that that alone makes it not an amendment. This is certainly consistent with how Deerfield amends its ordinances. Go ahead. Just to close the point, I don't think there's an ambiguity like there was in a comparative analysis. All right. And you were saying if we did undertake a comparative analysis, what indications are there that Deerfield amended the ordinance? Was it, did they show strikeouts, highlight strikeouts? And how much is too substantial to be an amendment? Isn't that part of the analysis? And weren't there substantial changes made here? So I'll take those in reverse order. Yes, there were substantial changes. How much is too much is really determined, I think, by the context that you're operating in. And here, the entire structure of the Floyd Act is to allow regulation and then increasing bond changes up to a ban. There's no question that a ban is permissible under the Floyd Act amendment. So you could move from regulation to a ban, and I don't think that would be considered new legislation. But as to the intent or what are the indicia, I think it's in multiple places, Your Honor. First is that these are titled amendments and called amendments, and it was called an amendment process throughout the discussions by the village board. Second, it is a strikeout that the text of the amendment itself is a redline version of the earlier statute that's laid on top of the earlier version, and then they're a strikeout. And then the third, the mayor and the village manager both testified at the summer judgment hearing that this was their intent to amend the early when they adopted the regulation, they were going to revisit it if necessary. After the Parkland shooting and concerns from parents and students and teachers, they amended the statute, the ordinance to ban assault weapons rather than just regulate them. Okay. I just have a couple other questions. Do you concede that the Deerfield's ban of assault weapons and the LCM are inconsistent with this Boyd Act and the concealed carry act in as much as Deerfield does prohibit certain firearms and magazines for firearms that are not banned under state law? Yes. Deerfield has exercised its authority to ban weapons that the state has not. Okay. And on page 16 of your reply brief, you do equate pistols with handguns. And then does Deerfield's position that the definition of handguns? And if so, which specific portions of that definition refer to handguns? I'll need to go through the, I don't think. To include that in your reply. So if you want to take time to take a look at that. Yeah. And okay. And I will do that, Your Honor. If I always concerned, but I can see something in court that we may be talking past each other, but I want to be clear is Deerfield had the authority to regulate and ban assault weapons. And they had the further authority to define assault weapons as they saw fit. There's no restriction on how they define assault weapons. And so they've exercised that. And I can see that they've done that. They did so entirely properly and consistent with the Boyd Act and consistent with all other provisions of Illinois law. Okay. And when you take a look at the answer to the question I asked before about whether assault weapon includes some handguns, is there a factual record that we have in this case that would lead us to that conclusion that is that Deerfield's definition of assault weapon does refer to handguns? Or is there a need to remand this case for further proceedings on that issue? Okay. Why don't I take that up, Your Honor, when I cite the specific provisions of the 2018 ordinance and the 2013 ordinance as well. I have one final question. Do we even have jurisdiction to address gun safe life claims with respect to the wildlife code? I mean, the trial court denied their motion for that. I think it's an interesting jurisdictional question whether they need to cross appeal that issue or whether it's truly an alternative basis. Frankly, Your Honor, I think it's such a weak claim factually and legally that it should just be disposed of on the merit. Okay. Thank you. Those are the questions I have at this time. Thank you. I have a few. Counsel, you said that the state and Deerfield has concurrent jurisdiction. Is that correct? Yes. Has the state of Illinois banned assault weapons? No, they have not. What they've done, Your Honor, is they've permitted home rule jurisdiction to assert local authority. They did so either prior to or within 10 days after the adoption of the Floyd Act Amendment. And Deerfield is one of the multiple home units that have exercised that authority. So I think to be more precise, the state has exclusive jurisdiction except where a local authority has acted. And in the example of Highland Park or Morton Grove, the city of Chicago or Deerfield, to name a few, those home rule jurisdictions have exclusive home rule authority over assault weapons. Would you agree that if Deerfield ever decides in its wisdom to repeal the ordinance relating to assault weapons, that it will be foreclosed from ever raising or enacting another ordinance regulating or prohibiting or taxing or registering assault weapons? I think it's a close question. If they were to announce that they no longer had authority over these weapons in any way, it's possible that I would agree with Your Honor. I think it's more that would be the type of amendment that I'd point out is permissible. They can go forward and backward as long as they retain the jurisdiction. I don't know that once they've regulated weapons, I don't know that they can divest themselves of home rule authority. Well, I was under the impression that they were granted this exception only to those municipalities that exercise the ordinance within the limited period of time. And if they repeal that ordinance that is within a limited period of time, then that ordinance ceases to exist in my mind. And therefore, I don't know how later on, regardless of the reasons why they gave for the repealer, that they would then thereafter, unless the legislature gave them another 10-day window sometime down the road in 2030 or whenever, to reenact their abilities to regulate or ban. Understood. What I'm struggling with is the statute provides for home rule jurisdiction if they act. I think it flows logically, what you're describing, Your Honor, but it just isn't in the text itself to say that you then divest yourself of home rule authority if you remove any restriction, if you no longer have any regulation of weapons. The legislature divest the city or municipality of Deerfield of this ability to pass ordinances relative to gun regulations? Certainly, Your Honor. If they passed, they properly passed a new statute that is consistent with Section 6H, they could assert exclusive statewide jurisdiction. What they did here was they struck a balance. In your responses to Justice Genov, you seem to authority to define what an assault weapon was and if that included double-barreled shotguns or semi-automatic shotguns or bolt-action shotguns, or as I think you were arguing relative to the size of the magazines and pistols, could redefine an assault weapon as anything that has a barrel more than 7-8 inches long, that fires more than one round before the firearm must be reloaded, which means you're talking about a single-shot pistol is the only thing that would be legalized if, in fact, the city of Deerfield decided to define its assault weapons regulation ordinance as including whatever it was that it decided to include. Am I misunderstanding the length and breadth that you seem to give the municipality to regulate firearms in that entity? Yes, Your Honor. I'm not making myself clear. The legislature left it to municipalities to provide the definition of assault weapon. What I was arguing was the definition of assault weapons as of 2013 in Illinois was a well-developed area of the law. There had been a federal assault weapons ban. There had been multiple municipal and state bans. More than 25% of the country had some sort of ban covering the use of assault weapons. I think it would be fair if they came into defining it as anything that fired more than a single shot or that it involved revolvers or handguns. That could be challenged as inconsistent with the legislature's intent in what Deerfield did here was they took the same type of ban that Chicago and Highland Park and Washington, D.C. and New York and California had, which all have flowed from the 1994 assault weapons ban by Congress. They didn't do anything out of the ordinary in defining their assault weapons. Are assault weapons military weapons? Not necessarily. What have been defined as assault weapons are a type of weapon that are in some ways derived from military weapons like AK-47s. Some have developed features that allow them to be fired rapidly, but they're not particularly military weapons. You know the difference between an assault rifle and an assault weapon? An assault rifle, we may be using different terms, but an assault rifle is a form of assault weapon. No, that's not true. An assault weapon is a semi-automatic weapon. An assault rifle is an automatic weapon. An automatic weapon is defined as discharging bullet after bullet until the trigger is released or until the magazine empties or until the chain belt empties or the clip empties. A semi-automatic weapon that looks like a military automatic assault rifle is called an assault weapon, and the only difference between the two is that although they may look alike, they don't operate the same. And so the terminology of assault weapon was derived in the process of deciding what guns that civilians should not be allowed to own, and they decided to pick guns that look like assault rifles that were automatic weapons, which require class three licenses to operate. Let's get back to, that's edification, that's not a question. Let's get back to the claims that are raised in this case. How many claims do you think were raised by the plaintiffs? Each set raised different claims. I believe the Easter Day plaintiffs attacked the preemption and whether or not the amendment was proper. The claims by the gun tape-like plaintiffs included those as well as claims under the Wildlife Code, claims under the Eminent Domain Act, and claims for unconstitutional takings. And were all of those claims adjudicated? All but the takings in the eminent domain, those remain before Judge Baranis below. And were they seeking alternative forms of relief, or were they seeking the same forms of relief, i.e. an affirmative or a negative prohibitive injunction? Both, both plaintiffs sought an injunction. And they sought these injunctions on all these accounts and issues or theories of recovery? I believe they did, yes. And how is this a final and appealable order under 304A if there are other claims seeking the same relief on the same transactional set of facts that would allow the mere statement of a 304A finding, giving this court jurisdiction when there are unresolved issues, claims that relate directly to the claims that are on appeal? This appears to me to be a classic situation where this is piecemeal litigation. Well, the takings in the Eminent Domain brought by gun tape-like relates to an entirely different set of factual arguments that this is a taking of their rights under the Illinois Constitution. I thought it was under the ordinance that they were claiming that there was a taking. Well, they're arguing that the requirement that the assault weapons and large-capacity magazines either be stored outside Deerfield's borders or destroyed is a taking. And the judge says that the factual record hadn't been developed on that. But as to the preemption amendment and definition of large-capacity magazine, those have been resolved and all factual issues have been presented to the court. Okay. I have no further questions. Thank you. Thank you, Your Honor. Are there any questions of the panel based upon any of the prior questions that were asked? I don't have any. No. No. Okay. Thank you. Sir, you'll have an opportunity to make rebuttal after the employees have argued. Thank you. Who's going to argue first? The Guns Save Lives or? This is Brian Barnes for the Guns Save Lives plaintiffs. I'll be arguing first and then Mr. Siegel. Thank you. Thank you, Your Honor. May it please the court, I'm Brian Barnes for the Guns Save Lives plaintiffs. In my remarks, I'm mostly going to focus on jurisdiction and wildlife code preemption and Mr. Siegel will address the other merits issues. But there is one point I'd like to make. I think there was a question about whether Deerfield's ordinance bans any handguns. And the relevant provision of the ordinance to look at would be 15-86, where there's a definition of assault weapons. Subsection 1B includes a handful of handguns that are specifically identified that are prohibited under Deerfield's ordinance. I'm not sure there's anything in the record about this, but I'll just represent to the handguns that are treated as assault weapons for purposes of Deerfield's ordinance that the vast majority of handguns, the most popular handguns, are not included. And Deerfield's ordinance, obviously, prohibits all large capacity magazines, including magazines specifically designed for handguns that do not qualify as assault weapons under Deerfield's ordinance. With that, let me turn to the jurisdictional issues in the case. The fundamental question this court has to decide is whether there was a final appealable order in Easterday when the trial court entered summary judgment disposing of all the claims in that case on March 22, 2019. Our submission is that the answer to that question has to turn on information that was available to the parties at the time. So the trial court's after-the-fact explanation for its decision to consolidate the cases and non-public facts about the Lake County Circuit Court's computer system are just irrelevant to the inquiry. To the best of our knowledge, no Illinois court has ever considered this type of non-public information when deciding whether two cases have merged, and for good reason. Litigants need to know when they are required to notice an appeal. And to allow this court's appellate jurisdiction to depend on facts known only to the trial court would leave litigants to guess about whether an immediate appeal is necessary. And I would just encourage the court to believe in good faith based on the information available to it at the time that a merger has occurred, only to learn later after the deadline for appealing that no merger happened based upon facts that the trial court hadn't previously disclosed. There would be a serious due process problem with denying that litigant the ability to appeal, yet an implication of defendant's position is that whether a notice of appeal must be filed can depend on facts that are first disclosed to the parties months after the deadline. And when we limit ourselves to the record that existed when the trial court disposed of all the claims in Easterday, it becomes clear that these cases did not merge. It's undisputed that the cases maintained separate docket entries, and the trial court entered separate summary judgment orders. The First and the Fifth Districts both gave dispositive weight to those same or very similar considerations in Marriage at Harnack, First Robinson Savings and Loan, and at Kasnell. And those same considerations ought to be decisive here, too. The one case defendant's side and response is Dow, but in Dow, the trial court entered a single summary judgment order. Paragraph 23 of the First District's opinion in that case makes that crystal clear. What's more, if the separate docket numbers and separate summary judgment orders left any doubt about whether the cases retained their separate identities, there are other facts that point in the same direction. After consolidation, the Gun Save Life and Easterday plaintiffs filed separate amended complaints presenting separate claims. The dockets in the two cases show events and filings occurring in one case but not the other after consolidation. The trial court referred to Easterday as the companion case to Gun Save Life. After disposing of all the claims in Easterday, the trial court scheduled a status conference in Gun Save Life but not Easterday. Based upon all of those facts, the parties had every reason to believe at the time that summary judgment was entered in Easterday that the cases had not merged. Finally, just a brief word about the wildlife code and preemption under the wildlife code. I think there was a question about whether we needed to file a cross appeal with respect to that claim. I would submit that we did not, and the reason is because the wildlife code really provides an alternative ground for affirming the judgment below. In other words, the rule about cross appeals is that you've got to file a cross appeal if you want this court to change the judgment below. With our wildlife code argument, we're not asking the court to change the judgment. We're providing the court with an alternative basis for affirmance. I'd also just note with respect to the wildlife code, the wildlife code specifies which kinds of firearms can or can't be used to take which kinds of game. And it's undisputed that Deerfield has banned certain firearms that can lawfully be used to take certain game. Our view is that preemption under the wildlife code just doesn't permit that. With those remarks, I'll just accept any questions that the court has for me. Thank you. Justice Hudson, do you have any questions? A couple of quick questions. Counsel, would you concede that the trial court made, albeit perhaps a little bit late in the proceeding, is a specific statement that it was its intent to merge the counts? Is there any question about the trial court's intention on that issue? There's no question about what the trial court intended. And I don't at all suggest that the trial court acted in bad faith or was being inaccurate in its explanation for its decision. But the problem is that that explanation came months after the kind of critical decision that Deerfield had to make about when to appeal. And so, as I said a moment ago, I think the critical thing to do is to think about sort of the converse of this situation, where imagine if someone thought that there had been a merger based on the record that existed at the time that summary judgment was entered. And then months or years later, the trial court revealed some previously undisclosed facts or some facts about its subjective intent when it entered an ambiguous consolidation order that mean that no merger occurred. Well, on defendant's view of the law with respect to this issue, that litigant would lose their ability to appeal. And so I think what that sort of hypothetical illustrates is that it's really the job of this court to decide whether there's appellate jurisdiction. And in making that judgment, the court's got to look at the record as it existed in the trial court at the time the litigant was deciding whether it needed to notice an appeal. Well, let me ask you this. I mean, obviously the hypothetical scenario you pose could be problematic, of course. However, what I'm wondering is where is the prejudice or unfairness to the parties at this time in this particular case, in light of the fact that all the litigants are now before the court, they're being granted access to the appellate court to make their full arguments on the matter. So has anybody been prejudiced by that scenario? Um, you know, I don't necessarily think that there's been prejudice, apart from the fact that, you know, obviously the serial appellate proceedings in this case, you know, caused my client and presumably the other litigants in this case to run up additional legal bills. One thing I would say, though, is that I don't see in this court's precedence concerning appellate jurisdiction and merger issue any inquiry into whether there's been prejudice. And in fact, you know, I certainly appreciate the concern around the potential unfairness of, you know, denying a litigant their ability to have an appeal. But our position isn't that, you know, Deerfield didn't have a right to an appeal. It's that Deerfield doesn't have the right to appeal. And it was this court that dismissed the previous appeal because Deerfield didn't carry its burden to establish that jurisdiction existed. And so, you know, to the extent that there's unfairness here, it derives from that, not from a proper application of this court's merger jurisprudence. All right. Quick question with regard to your reference to the wildlife code and its potential impact in this case. On March 22, 2019, the trial court did determine that the wildlife code did not preempt Deerfield's 2018 ordinances, correct? That's right. And so would you agree the effect of that order was to deny summary judgment with respects to counts two and four? That also correct? Yeah, I think that is right. Isn't the denial of a summary judgment motion not a final order? How do we get into this? How do we deal with this now? Well, again, I think it's right. And I think it's the way we're presenting the wildlife code argument. It's an alternative basis for affirmance of the injunction that the trial court entered. But the trial court simply denied summary judgment, never specifically ruled on the merits of it, did it? I think I think the court is right that to the best of my recollection, Deerfield never moved for or cross moved for summary judgment on that claim. But the point remains that the court does have before it basically a question about the propriety of an injunction that prevents Deerfield from enforcing this ordinance. And we're basically presenting the wildlife code as an alternative rationale for declining to overturn that that injunction. All right, thank you, counsel. That's all I have at this time. Thank you, Joseph. Do you know if you have any questions? Yes, I had just one follow up on the jurisdiction issue. You agreed the trial court here did expressly state that he'd intended to merge these actions. Doesn't that fact and that fact alone distinguish this case from all the cases that Gun Safe Life cited as well as yesterday? Well, I guess here's the thing that I would I would point to about all those other cases is that what we don't see in those cases is the appellate court remanding the case to the trial court for clarification. And, you know, I commend in particular to the court's attention, the matter of adoption S.G. case, where, you know, that's the case where the first district clearly struggled with trying to decipher based on the record that was before it, whether the trial court had merged the cases. It regarded it as a close case. And the fact that we don't see a remand there, instead we see, you know, the court on appeal barreling ahead and making a determination. It underscores the fact that these kinds of after the fact explanations by the trial court, they're just not relevant to the legal question about whether this court has appellate jurisdiction. OK, thank you. I don't have any further questions of Gun Safe Life at this time. Thank you. Counsel, have you ever heard of the statement that the appellate court in the state of Illinois is a court of limited jurisdiction? I have heard that statement. Yes, Your Honor. That we are not a court of original jurisdiction? Yes, Your Honor. And that we do not have the ability to grant ourselves jurisdiction if jurisdiction does not exist? That's clearly correct. Are you aware that the Supreme Court and its supervisor authority has the ability to order us to accept and dispose of a case for whatever reason it decides? I am generally aware of the Supreme Court supervisor authority, yes. OK, so when you said they, I think you said that they may have a right to an appeal, but they did not appeal. Did I understand you correctly? Well, I guess the way I would put it is they had a right to an appeal, but not the two appeals. And it was the defendant's burden during the first appeal to establish that this court had jurisdiction. This court concluded that the defendant had not carried that burden and dismissed the appeal. And so my submission here is that Deerfield doesn't have a right to basically a second appeal. I see. What if we didn't have jurisdiction before because there was not a final and appealable order and we don't have jurisdiction now because it's not a final and appealable order and it goes back for a third time and all the claims and all the pleadings are adjudicated, ruled upon, determined to be either lacking or deserving of merit and are resolved once and for all. And then within 30 days of a denial of a post-judgment motion, if there is one, or within 30 days from the entry of the final and enforceable judgment on all counts, that if someone files a notice of appeal, that we may be able to entertain the merits of this case. Well, I guess I'd say, Your Honor, that I have consistently throughout the litigation thought of our takings, wildlife code and firearm preemption claims as being separate claims as opposed to a single claim. Obviously, the Easter Day case is somewhat differently situated from ours in the sense that there's no doubt that they only had a single claim in that case and that the trial court has already basically resolved that one claim on summary judgment. Obviously, our view is that the two cases didn't merge and so I could conceive of a scenario, if the court agrees with our merger analysis, I could conceive of a scenario where the court might, if it disagreed with me about there being more than one claim in our case, remanding the Guns Save Lives case or dismissing the appeal as to Guns Save Lives, but saying that in Easter Day, that that case, there was a final judgment back in 2019 that Deerfield failed to properly appeal. Okay. I don't have any further questions. Does the panel have any questions based upon the previous questions? I do not. No, neither do I. Thank you. And will counsel for Mr. Easter Day, please present his case. Mr. Siegel, I think it is. Yes, good morning, your honors. Can you hear me? Yes. Excellent. Your honors, may it please, good morning, may it please the court. My name is David Siegel. I represent Easter Day plaintiffs. Your honors, I'll be addressing then the issue of the court's preemption decision. And I'll start just very quickly then with the timeline. On July 1st of 2013, the village passed ordinance 013-24, where assault weapons were allowed with safe storage requirements and restrictions on possession carrying transport. And it specifically had a self-defense exception allowed. There was no mention whatsoever of large capacity magazines, which I'll call LCMs, except as their use, they might be used with an assault weapon. Eight days later, the Foy Card Act and the Concealed Carry Act are amended regarding preemption. And the 10-day window opens up for inconsistent ordinances if a local government wished to do that. Deerfield stuck with 013-24. In April of 2018, then the village passes 018-06, where now it goes from assault weapons being allowed with the restrictions and requirements to a ban. And no self-defense exception. And it says that LCMs will be destroyed, or confiscated LCMs will be destroyed, but there's nothing in there actually banning them. A point that's noted in the court when the court enters a TRO in June of 2018. And then six days later, the village passes 018-19, where it now bans LCMs for the very first time. And then nine months later, in March of 2019, the permanent injunction was entered. So the circuit court was correct in ruling that the ordinances, the 2018 ordinances, were preempted by the General Assembly. Section 13.1b of the Floyd Act specifically says that all handguns and ammunitions for handguns are preempted by the state. That includes any magazines that the defendant would classify as LCMs so long as they are for handguns, which are common. 13.1c of the Floyd Act says, which is really where I think the main dispute by the village lies, says that assault weapons are preempted unless inconsistent local ordinances are enacted on, before, or within 10 days of the act's effected date. And then it says that if an ordinance enacted within the 10 days of this date can be amended. So when the defendant says that there's no question that a ban is permissible under the Floyd card amendment, it's only if it was originally done within the 10 day window. And the village didn't do it. They had the opportunity, they chose not to. So it says inconsistent in the statute in 13.1c, and that's important because section 1.1 of the Floyd Act defines firearm, which is any device by whatever name known, designed to expel a projectile, dot, dot, dot. And section 2A1 says that if you want a firearm, you need to have a Floyd card. So assault weapons are allowed under the Floyd Act. So what's inconsistent if you ban them? The village didn't do that. The village, I'm sorry, the state specifically said under 13.1e that this is a denial limitation under section 6H of the Illinois Constitution. Full preemption, exclusive power of the state. They could have done it under 6I or 6H&I and didn't do it. The state, the village wants to keep talking about experiments in concurrent jurisdiction and local jurisdiction being allowed, and it's not. Except as the statute allowed and the village didn't do it. When the legislature wanted to limit, wanted to preempt, it knows how to do it. You look to the insurance code or the Medical Practice Act. When the legislature wanted to limit concurrent exercise of power without preemption, it knows how to do that too. Look to the highway code, for example. The village was correct when it said that you cannot ignore the clear language of the General Assembly. This isn't hybrid jurisdiction. It's not concurrent jurisdiction. I see that that buzzer is going off. If I may just briefly, Your Honor. Yes. Clearly, there's no... I'm sorry? You may. Thank you, Your Honor. Clearly, this is full preemption and they didn't comply with it. Amendments not even allowed of this, but even if the courts that amendment was allowed, AC versus Peru and Nolan versus City of Granite City are very clear when you have one ordinance and then a new version of the ordinance where you can't do it both. It's not an amendment. You can call it an amendment all day long. You can title it an amendment. But if there's a clear conflict between the two ordinances where they both can't be carried out, then you have an intention to repeal. That is exactly what happened here. The circuit court noted that  when it noted it. And LCMs, if you look to the Heller two case and you look even the Friedman case in the Seventh Circuit, it's clear large capacity magazines are not a category of assault weapons. They are totally different. A reference to a now repealed 26-year-old federal statute that predated the Heller decision in the Supreme Court. They're completely different things. And to the extent that the village says otherwise, to the extent that the village tries to equate handguns and assault weapons when clearly the Floyd Card Act and the Concealed Carry Act distinguishes between the two, those arguments should not be well taken. And the circuit court should be affirmed. And I'd be happy. I'll rely obviously on the briefs submitted by the parties as well. And since my time has gone over, which I appreciate the court's indulgence, I'd be happy to answer any questions. Justice Hudson, do you have any questions? Yes, Mr. Segal, I'd like you to clarify sort of a threshold question. Is it your position that section 13.1 of the Floyd Card Act preempts all regulation by home rule units relating to the possession or ownership of assault weapons, period? Yes, unless 13.1c, it only prohibits and preempts to the extent that the local ordinance is inconsistent with the act. And the act allows them. So you can see there is an exception. It's carved out by the board. Plain language of the statute with legislature says, unless the ordinance or regulatory enactment was honored before and they give a window. So you're conceding it's not a complete and total ban under any circumstances. If the village were to comply with the exception, correct? Yes, I'm not saying that the village or any village can't do anything ever. For example, the ordinance that was in 2013, that talked about safe storage and transport and whatnot. Let's say hypothetically speaking that they didn't cast that ordinance eight days before the Floyd Act was amended. Let's say they passed it a year later. Well, now it's an ordinance that isn't necessarily inconsistent, at least that the circuit court found. It's not disallowing residents of the village from having assault weapons. It's saying you can have them, but here's the rules on how you're going to have them. Let me ask you this. Is it your position that Deerfield's original 2013 ordinance was not inconsistent with the provisions of the Floyd Card Act? Or was it inconsistent? No, it was not. There's no challenge to the 2013 ordinance in this case. While my colleague might disagree, it's the circuit court's position, and we're not challenging that finding that a regulation that says how you can possess a firearm is inconsistent so long as it doesn't go against the general rule of the statute, that if you have a Floyd card, you can have them. And that's where the fatal flaw is for the village because it's not inconsistent. And therefore there's nothing that they would legally be allowed to have amended. And that is taking apart the issue of whether or not it was actually an amendment, which it wasn't. Were you saying that the village's 2013 ordinance was not inconsistent with the act even though it regulated the possession and ownership of assault weapons beyond what was required by the state? How is that not inconsistent? Because the only thing that the Floyd Act says is that if you have a Floyd card, you can have them. So it's not inconsistent. Again, the circuit court found this and I'm not disagreeing. It's not inconsistent to say, here's the rules for how to have them. Now, I suppose, again, I could take to all the way to the next argument with hypotheticals, and I know nobody wants that. But if the village had said, you can have them, but you have to bury them in the backyard under 10 feet of dirt, and you can only take it out from the hours of 3 a.m. to 3.15 a.m., and then you have to bury it again. I mean, yeah, at some point, an ordinance could become inconsistent with the general principle of, well, you can have them, but it's really a sham. But you can have them, but you have to keep them stored, and you can only use them in self-defense, and here's the rules for transport. We're not saying that that's inconsistent with the act, because you're still allowed to have them. So because that's the case, that it wasn't inconsistent, then the village didn't actually pass any ordinance that qualified under Section 13.1c of the FOID Act that could be amended later. Again, leaving apart the issue of whether or not it was actually an amendment. You mentioned the Athe case. You're citing that case here today for what proposition? Athe says that if whether an ordinance is a mandatory, and again, this goes to the amendment issue, whether an ordinance is a mandatory is not determined by its title, nor the reference to another ordinance in the title, and that a subsequent statute that revises the whole subject matter of a former statute and is intended as a substitute for it, although it contains no express words to that effect, is a repeal of the former act, and that is exactly what we have here when you take something that you're allowed to have, but with regulation and say, you can no longer have it anymore. That's a complete 180, and there's no other way to look at it than you're repealing the old and replacing it with the new. In the Athe case, the court in arriving at its decision specifically recognized that it was called upon in that case to ascertain the city council's intent. Unlike in Athe here, it was clear that Deerfield indicated that it intended for the ordinance to serve as an amendment 2018 to 2013 ordinance. The intent of Deerfield, at least ostensibly, was pretty clear based on its testimony, wasn't it? Well, the court ruled that the testimony was not relevant to the legal discussion, and we agree with that. The, again, they can say the court, I don't believe that the court looks to the intent. The court looks to the two statutes and does a comparative analysis of the two statutes and what are the differences, and if the differences are that they both can't be carried out and that the subject matter is now complete, that the provisions now are completely changed, then we're talking about a repeal and a replacement. And the village, I'm sorry. The case indicated that intent was a critical component of the analysis. Well, to the extent that intent might be a factor to consider, it still doesn't change the effect of looking at the two ordinances and seeing the differences between the two. The village knows this because if you look in their own municipal code, section 1-7, that when you have an existing ordinance and a different ordinance, when the provisions relate to the same subject matter and are substantially the same, it's not a new enactment. And here, they're not substantially the same. So if you want to look to village intent, look to the village code. And even the village code says that what the village did here is not continuing an existing ordinance. This is taking a completely new ordinance, slapping the old title on it and saying, oh, it's just an amendment. But it's not. All right. Thank you, Mr. Seeley. That's all I have at this time. Thank you, Your Honor. Thank you. Justice Enoff, do you have any questions? Just a couple. I'd like to go back to the question of inconsistency. 13.1A tells us, has the general rule that the Floyd-Cardack is not intended to invalidate local regulations that impose, and I'm quoting, greater restrictions or limitations on the acquisition, possession, and transfer of firearms that are imposed by this act. Now, C contains an exception to the general rule. When Section C mentions regulations that are inconsistent with the Floyd-Cardack, doesn't that simply mean that the regulations that impose greater restrictions on assault weapons than the act imposes, that is, possession of a Floyd-Card? How can it mean anything different? Well, first of all, Section 13.A starts with saying, except as otherwise provided in the Firearm Concealed Carry Act in subsections B and C of this section. So the rest of Section A, I don't believe, actually applies to this analysis, and we're only looking to B and C. And as to C, it says, the regulation of the possession or ownership of assault weapons are exclusive powers and functions of the state, and any ordinance or regulation or portion thereof that purports to regulate such in a manner that is inconsistent with this act shall be invalid unless it's enacted on or before within 10 days. And if, and to go back to my hypothetical, if a year later instead of 10 days before, the village had passed what is in O1324 and said safe storage and transport, and I believe that if someone had sued and said, oh, no, no, no, you can't do that because 10-day window, I think the village would be able to say no because that was only four ordinances that are inconsistent, and this isn't inconsistent. Okay. I see what you're arguing. All right. Jumping to and going back to the question of amendments. Amendments by definition are changes. The question really is at what point are changes so substantial that they no longer constitute amendments? These were not so substantial, were they, that they couldn't constitute amendments? Your Honor, if that's a question, then the answer is absolutely, yes, they were so substantial that they could no longer constitute an amendment. There's two reasons for that. The first is that one day you're allowed to have them, and the next day you're not allowed to have them, and if you do have them, they're going to be confiscated and destroyed, and you're going to pay penalties. So that is an absolute 180 to say that one day this is allowed, and the next day that's not allowed. That is not an amendment. Not in the legal sense that we are discussing here. The second is the LCM issue. In 013-24, they're not mentioned except to talk about how they could be regulated if you're using them as an assault weapon, but they're not banned at all. And then in the 018-06, they're not banned either. They say if they're confiscated, we're going to destroy them, but nothing actually banned them. So it's only in the 018-19 that they made that change and said, well, they're banned too. So you have two recognitions in there. With regard to LCMs, you have two recognitions in the earlier 18 and the later 18 that they didn't do this in the first instance. And where you take something that isn't banned, like the assault weapon issue, when you take something that isn't banned and turn around and say, oh, now it is banned, in the sense that we're talking about it, that is not an amendment. That is a new law. Now, by compare, a new ordinance, by comparison, let's say that gun manufacturer X puts out a new model and the village says, oh, well, those aren't banned. We need to add that to the list. That's an amendment. But to turn around and say, everything that was allowed is now not allowed is not an amendment. And I really want to, and I apologize if I'm going off on a tiny tangent, Your Honor, but the village's argument that handguns can be lumped into assault weapons because they feel like that's how defining it when the statutes could not be clear that they're separate things, the court can't give merit to. Hopefully I answered the question. Thank you. I have just a couple other questions. Turning to 13.1B and handguns, let me see if I understand your arguments correctly, both in your brief and your mention today. One, any portions of Deerfield's definition of assault weapon that does encompass handguns are preempted in their application to holders of valid FOIA cards and concealed carry licenses by section 13.1B, is that correct? And 90 of the Penalty Carry Act. Yes. Okay. And to the extent that Deerfield's ban of large capacity magazines does regulate ammunition for handguns, it is preempted in its application to the same holders of the FOIA cards and CCA license holders. Isn't that correct? Is that your other part of the argument? Not only is it correct, but I draw attention to the court that there's not even, in neither of those statutes, was there even the 10-day window that the village is making the issue about. So there was no discretion given and with regard to handguns and handgun ammunition, there was no discretion given to the village. It was simply preempted under section 6H. All right. Do we have a factual record in this case as to which portions of Deerfield's definition of assault weapon actually refer to handguns? We had at the... Mr. Barnes mentioned one section, but do you agree with that section or is there another section and is there a factual record here? Well, I think we have... I don't think we're dealing   the actual records and see if there's a factual record. I think we're dealing with two different parts of the law and come to the conclusion, the only possible conclusion is the one that the plaintiffs are advancing and that is that the state statute defines handgun as a device that issues a projectile that pneumatic gas ejecting a projectile dot, dot, dot, designed to be used by a single hand. And then the statute, the ordinance in its definition of assault weapon, I believe lists a number of handguns. And I believe if someone raised a challenge with regard to those handguns, I think the village would have a real legal issue here. But my client's not advancing with regards to any of the specific listed handguns there. Someone might in the future and I think that the village would run into a problem. But I think that if you look to the state definition of what a handgun is and you look to if the village tried to actually enforce against what is a handgun, I think as a legal matter, not even requiring a factual record, it would see that a trier of fact or a trier of law would see that it violates the state statute. The ordinance section 15-86 under definitions, Deerfield's ordinance under assault weapons sub three includes a semi-automatic pistol that has the capacity to accept a detachable magazine and has one or more of the following. And then they list the characteristics. Is there anywhere where we know if this pistol is also considered a handgun and would come within the ban under B? To the extent, again, I think that it's, I'm of course happy to have the discussion. I don't know that it actually is an issue in this case. However, I believe that the answer to your question is that if the, to the extent that that firearm meets the definition of handgun as set in the state statute, I think that it would be covered under 13.1B. I think that that might be an interesting challenge for someone someday, but plaintiffs aren't making it. Okay. Thank you. Those are my questions. Thanks very much. Thank you, Your Honor. Thank you. Is there any case law that distinguishes the regulation of PUDs and amended for ordinances? Regarding plan to unit developments versus an ordinance that bans plan and unit developments? Your Honor, I guess the, I guess the short answer is I'm not aware, but I think that the AFI case comes closest perhaps when it, when it changes the zoning from, it was either commercial to residential or vice versa. And the court found that that was a new ordinance. I think that might be the closest. I apologize, but if there is a case regarding the specific back scenario you just mentioned, I'm not aware of it. Well, I'm not so hung up as to spend three hours or four hours looking for it, but it's probably out there somewhere. The definition of an amendment was a change in the ordinance and taking that to its logical conclusion. Then if, and I think I asked something similar of this to appellate counsel, and that is, is that, well, if it's just an amendment, then the village can redefine an assault weapon to include virtually anything that isn't a BB gun or a taser or a laser and call it an assault weapon and then ban it. Is that, does that logic seem at least to flow like a logical syllogism? Is there some premise that I have assumed that I've missed? Well, I think that, and this kind of goes back to the discussion with Justice Zinoff, I believe that to the extent that this would, that they would try to be lumping in handguns, I think that would run afoul of section 13.1B of the Floyd Act. But I mean, I think that the courts- What about shotguns, lever action rifles, bolt action rifles, pump action rifles? I think that the village, I think under the village's argument, their argument is basically that they could do whatever they wanted. And I think that the answer to the eventual conclusion of that question is that since an assault weapon is defined to have certain features and that the pump action shotgun, for example, would have none of those, I think that ultimately I would think a trier effect would find that that is a bridge too far. Well, let's limit it down then to virtually all semi-automatic weapons. Whether they have a detachable magazine or a detachable magazine that is less than 10 rounds, one bullet placed properly is very, very lethal and very, very dangerous. And a shotgun, when it fires double lock buck out of one 12-gauge round, every time you pull the trigger about anywhere from 20 to 40 pellets go out at once, which based upon the diameter of those pellets, it's an equivalent of firing a 20 or a 30-round magazine every time you pull the trigger on a shotgun. So it would seem that logically at least the shotgun within 40 yards is more lethal than the assault weapon. Because if you have an extended magazine that goes out to about eight or nine shells, you have eight or nine magazines of 20 to 30 bullets going out with the pull every time you pull the trigger. And if it's a semi-automatic shotgun, it would be even more lethal because it could fire as fast that you could pull the trigger. You wouldn't have to pump it or use a lever or whatever. So it is plausible, is it not, that the village would have, at least logically, the ability to outlaw virtually all shotguns, especially those that are semi-automatic? If the village were to ignore, for example, the U.S. Supreme Court's ruling in the Heller case that when it comes to firearm restrictions, certain policy choices are off the table. And if the court and if the village was actually allowed to rule by, for lack of a better word, emotion and say, well, this is dangerous, this should be banned, then yes. And if those were the parameters and the envelope was allowed to not just be pushed, which I think they've pushed too far in this case, but just break it entirely, then there'd be nothing to stop them from doing whatever they wanted. They could define anything as an assault weapon. But what stops them is the preemption requirements of state law. And the courts, when they try to lump something into a category, like, say, lumping handguns into the definition of assault weapons, and it'd be up to a court to presumably to say, no, this goes beyond your authority and has to be stricken. 13.1b preempts them from doing anything, from banning handguns and handgun ammunition. It preempts them, in fact, from doing anything regarding the regulation, licensing, possession, registration, and transportation of handguns and ammunition for handguns. If they try to get around that and say, well, we're lumping that in with assault weapons and therefore we can ban them now, I guess, Your Honor, it would just be up to courts like yourself to stop them. Okay. I hope that answered your question. Yeah. What is your response to whether or not the 304a language actually creates a final and appealable order insofar as your client is concerned regarding all the claims that you pled have or have not been adjudicated and ruled upon by the trial court? Your Honor, I was frankly stunned to find out that my case had been merged with the other case. One of the last questions that was asked to my colleague was about prejudice. And the facts of the matter is, Your Honor, I thought I had won. The court gave the Easterday plaintiffs everything they had asked for. We filed a one-count complaint based on preemption and the court ruled in our favor. And when you add that up with all the other things that my colleague pointed out in the briefs point out about separate dockets and separate orders and the labeling of us as the companion case to theirs and the fact that their case continued on with another status state when we did not, I thought our case was over. And so I was quite frankly, I was quite frankly stunned to find that the opposite had actually occurred and that it actually occurred apparently in secret. And when it came to that, I guess I didn't contest the 304A aspect of that because we had gotten everything we wanted and the village was appealing basically only those parts of the order that had given us the relief we wanted. And so certainly that's why I wouldn't have filed a cross appeal and I interpreted the wildlife code of the claim of the other plaintiffs as being an alternative form of relief and as well. And so long as their takings claim was still pending but the court granted 304A language on the preemption, I wasn't questioning on background the court's jurisdiction. I was, but as I've, as I briefed and as my colleague discussed, the idea that the cases were merged based on all the evidence to the contrary, I just thought it was an incorrect conclusion and continue to maintain that. I have no further questions. Are there any questions the panel has based upon questions previously asked and answered? No, no. Thank you, Your Honor. Thank you. Thank you. Counsel, you may now make your rebuttal. Thank you very much, Your Honor. I'll start by returning to Justice Zedoff's question about pistols and refer you specifically to appendix 37 that has the new ordinance, the 2018 ordinance that banned assault weapons. There's a definition section there which is carried over exactly from the 2013 ordinance that defines all of the assault weapons that includes a small subset of pistols that are semi-automatic, have a detachable magazine and other defined characteristics. All of that was adopted from the Cook County ordinance which has been tested, has been taken all the way up to the Supreme Court and found valid. So I don't think there's a textual issue with the definition of assault weapons or the fact that a subset of pistols are included with assault weapons. That's how it's been done in every assault weapons definition that I'm familiar with. So I note that the language refers to assault weapons and then anything inconsistent with the act. So there's nothing that specifically carves out handguns if they're assault weapons. I know that Justice has had a concern that what if we had such a broad definition that every gun was swept up in assault weapons? One, that simply hasn't happened. There's a well-defined definition of assault weapons. The two, if that were to happen, that could be arbitrary incursions, that could be unconstitutional. There are a number of challenges that could be raised to that. They just aren't at issue here. There's a small set of pistols that are defined as assault weapons, but that's consistent with the statutes that have been reviewed by the Supreme Court, that have been reviewed by the Seventh Circuit, and have been repeatedly found to be valid.  about bans and regulation. Bans are a form of regulation, but all regulation of assault weapons are permitted under the Act, provided it's done within the 10-day window or before, as happened here. I know Mr. Siegel was going back and forth between bans and regulation and amendments, and it was a little confusing, but it's clear the Act permits regulation of assault weapons by home rule authorities, provided they do it within the window or beforehand, which is what happened here. If I hear Easterday's argument, that every jurisdiction of Illinois could adopt a safe storage and transportation restriction tomorrow, because that would not be inconsistent with state law, I don't think that's how the law reads. I think that if you didn't act within the 10-day window, you can't now regulate assault weapons in any way, including you can't ban them. So the Easterday position just doesn't make sense to me. Finally, I think the question of jurisdiction, we kindly appealed the Easterday case, and the reason it came back was this court properly held that it was unclear whether the court intended to merge the cases. We went back before the circuit court, and he made very clear I intended to merge these cases, and I did so. So the question of whether or not the intent of the court was met has now been satisfied. No other decision has had that procedural posture. This is unique, and it supports the jurisdiction here. So I'll take your questions. Justice Hudson, do you have any questions? No, I do not. Justice Zinov, do you have any questions? No, I do not. Counsel, can you tell me what or why the pistols are listed as assault weapons? I don't know why they've been, why the Village of Deer adopted pistols as part of the ban on assault weapons. It was because that was in the Chicago Ordinance that was used as a foundation, and the Chicago Ordinance, I believe, was based on the federal assault weapons ban from 94. And were those pistols included in the definition of an assault weapon when the original ordinance was passed in that 10-day window? Yes, Your Honor, they were. The 2013 ordinance included all of those. Included all the pistols, okay. Not every pistol, the pistols which were defined as assault weapons. That's consistent with the Wilson case and with the Highland Park case in the Seventh Circuit. Are these pistols things like Bushmasters with a short barrel and no stock attached? I don't think with no stock attached. I think you would need to have a stock attached. But the list includes the specific type of pistols that are covered by the assault weapons ban. And that was the foundation for that was the Chicago Ordinance. Well, do you know what a short-barreled rifle is? I think I do. Are you aware you need a special license issued by the federal government for it? I'm not familiar with that, Your Honor. Okay, well. The AR-15 has been formulated in a configuration where it looks like a pistol instead of a rifle. And it has the tube coming out the back end of the pistol because that's the spring that pushes back the recoil spring that pushes the bolt back shut, which is usually indigenous and part of the stock, but there is no stock on it. And if the pistol has a barrel, I believe it's less than 16 inches, and it has a stock on it, then it is considered a federally controlled weapon. So that's why I'm asking you if the pistols you're referring to are short-barreled rifles without stocks. The answer is I don't know, Your Honor. Okay, I have no further questions. If there are any other questions based upon the questions that were asked. You have none? I have none. Okay, very well. Thank you. It was a very interesting morning. And the oral arguments are now terminated and closed. Thank you. Goodbye. Thank you, Your Honors.